FRANK JEWELL, Appellant, v. J. H. LOGSDON et al., Appellees.

**MORTGAGES:** Foreclosure—Nonpayment of Interest—Part Payment
1 —Effect. A mortgage provision for foreclosure in case the matured interest be not paid is not waived *per se* by the acceptance by the mortgagee of *part* of such interest. (See Book of Anno., Vol. 1, Sec. 12372, Anno. 9 *et seq.*)

**MORTGAGES:** Foreclosure—Appointment of Receiver—Withholding
2 Order. The court will, under some circumstances arising under mortgage foreclosure, hold in abeyance until after sale on execution a contract provision for the appointment of a receiver, and will then make the appointment if the sale reveals a deficiency. So held where the testimony as to the value of the property was quite conflicting. (See Book of Anno., Vol. 1, Sec. 12713, Anno. 42 *et seq.*)

Headnote 1: 27 Cyc. p. 1538.　Headnote 2: 27 Cyc. p. 1628.

*Appeal from Winneshiek District Court.*—H. E. TAYLOR, Judge.

DECEMBER 15, 1925.

ACTION upon a promissory note for $40,000, with accumulated interest, and to foreclose a mortgage on real estate, given to secure the payment thereof. The court dismissed plaintiff's petition, and taxed the costs to him. Plaintiff appeals.—*Reversed.*

*E. R. Acres* and *Parnell Shea,* for appellant.

*A. E. Sheridan, Willett & Nelson, J. A. Nelson,* and *Frank Sayre,* for appellees.

STEVENS, J.—I. This is an action in equity upon a promissory note for $40,000 executed March 1, 1920, to appellant by J. H. Logsdon and Elvie, his wife. The note by its terms matures March 1, 1930, and draws interest at the rate of 5½ per cent, payable annually. The annual interest payments are evidenced by 10 coupon notes for $2,200 each. The mortgage covers the SE¼ of Section 8 and the SW¼ of Section 9, Township 98, Range 8, Winneshiek County, Iowa. The legal title, at the time of the trial, was in Lloyd Logsdon, and the premises were occupied by John H. Logsdon, his brother, and the son of the mortgagors, and used as a fine stock farm. The mortgage contains a clause providing that, if default be made in the payment of interest for 30 days after the same becomes due, the mortgagee may, at his option, elect to declare the whole amount due and to at once institute foreclosure proceedings.

The petition in this action was filed February 2, 1924. At that time, the total interest payments made at intervals covering a period from November 26, 1921, to February 1, 1924, amounted to $2,724.37, leaving a balance due, as computed by counsel, of $6,655.12. The defendants, who include J. G. Schaum and other junior lien holders, set up as a defense, or by way of a plea in abatement, that appellant has waived the provision of the mortgage accelerating the maturity of the note, and that, by an express agreement, partly in writing and partly oral, the

mortgagee agreed to accept 20 per cent of the gross sales of pure-bred stock on the premises, which the appellees J. H. and John Logsdon agreed would exceed the interest for one year, and to defer foreclosure proceedings for that period. Aside from the provisions and effect of the judgment dismissing the petition, the sole questions involved are such as arise out of the pleas of waiver and the above agreement. The pleadings cover more than 100 pages of the abstract, and much of the evidence is immaterial to the issues. Evidence tending to show the value of the farm is in more or less conflict, but it is unnecessary to determine this question at present. The situation of the parties at the time it is claimed the alleged agreement was entered into between appellees J. H. and John Logsdon and appellant, to defer foreclosure proceedings for one year upon the payment by the former of 20 per cent of the gross sales of stock sold, was about as follows:

J. H. Logsdon owned some other lands, which were heavily incumbered. The evidence tending to show that he was practically insolvent is not disputed. John Logsdon, the son, does not appear to have been the owner of any real estate, and all of his personal property was heavily incumbered by chattel mortgages. He owed considerable unsecured indebtedness, and there were several unsatisfied judgments against him. Lloyd Logsdon, who was practically without property previous to that date, received a deed, January 14, 1924, from J. H. Logsdon, Sr., and wife, to the above described land and two other farms, containing 100 and 120 acres, respectively, without mentioning the incumbrances. The deed recited a consideration of $1.00 and other consideration. The consideration actually paid was $11,000, in the form of a promissory note. John H. Logsdon appears to be a man of large experience and ability in the rearing and sale of pure-bred stock and collie dogs. He was in possession of the land under a contract with his father, and had paid the rent up to March 1, 1925.

John H. Logsdon testified that he received a letter from appellant's attorney in August, 1923, informing him that appellant had elected to foreclose the mortgage; that he immediately interviewed his father and appellant, promising the latter, on his own and his father's behalf, that he would make payments

from the proceeds of the sale of his stock, as before stated; and that appellant agreed to accept the same and to withhold foreclosure proceedings for one year, and to waive the provisions of the mortgage giving him the right to foreclose before the maturity of the note, March 1, 1930. Appellant denied the agreement, but admitted that the offer was made and declined. The testimony of John H. Logsdon is corroborated by one witness, who testified that appellant told him about the agreement. It also appears that Logsdon repeatedly told other creditors that such an arrangement had been made, and that he secured the oral consent of the holder of a chattel mortgage upon his stock to the agreement. Appellant was not present when any of these conversations were had. Two payments were made after August 23d, the date on which the alleged agreement was entered into, one of $400 and one of $100. These items were paid during 1923, but were not credited by appellant upon the interest coupon until February 1, 1924. According to the testimony of appellant, he repeatedly demanded payment of the interest, and was put off with promises. Logsdon does not claim to have given appellant a statement as to the amount of stock on the premises, nor was any basis mentioned upon which even an approximate estimate of the amount likely to be realized by appellant on the past-due interest could be made. The only provision in the alleged agreement for the payment of past-due interest was that whatever was received in excess of $2,200 would be applied thereon; nor was any provision made for the payment of interest after the year expired. Appellant denied that he entered into the alleged contract, or that he ever so stated to anyone. Notwithstanding that the testimony of John H. Logsdon is corroborated by the testimony of one witness, as above stated, and by some circumstances, we are, in view of the incompleteness of the alleged agreement and the failure to make provision for the payment of past-due and future-accruing interest, together with the financial condition of all of the parties, of the opinion that the contract is not proved. There was no reason why appellant should forego the right to foreclose the mortgage, under the circumstances, because of the alleged uncertain promises of Logsdon, and no reasonable ground to believe that a creditor thus situated would be likely to do so.

It is further urged that the two payments made after August 23d and the acceptance thereof by appellant corroborate the claim of appellees, and constitute a waiver of the right to foreclose the mortgage. In the first place, neither payment was made on the basis of 20 per cent of the sales of stock. The acceptance thereof is entirely consistent with the testimony of appellant that John H. Logsdon requested him to defer action until December 1st, and that he refused his consent to do so, but did, in fact, wait until February 1st the following year, and accepted the payments in the hopes that other payments in substantial amounts would follow.

This court has always been reluctant to give effect to clauses in mortgages such as the one in question, and, although contractual, has treated them as provisions for forfeiture. We have never, however, held them invalid. In considering the facts of each case thus presented on appeal to this court, every reasonable doubt has been resolved in favor of the debtor. This is to prevent any injustice or the taking of an unconscionable advantage of a debtor to whom long time has been given for the payment of his obligations. The doctrine of waiver has also been applied in many cases, some of which are cited by appellee, as follows: *Beason v. Johnston,* 194 Iowa 1100; *Merriam v. Leeper,* 192 Iowa 587; *Jones v. DeMoss,* 151 Iowa 112; *Watts v. Creighton,* 85 Iowa 154; *Smalley v. Renken,* 85 Iowa 612; *Farmers & Merch. Bank v. Daiker,* 153 Iowa 484. But in no case has it been held that the acceptance of a payment of less than the total amount of interest, *per se,* constituted a waiver of the right to foreclose. The mortgagee cannot be penalized for the mere receipt of that to which he is, in equity and good conscience, entitled. Testimony was introduced by appellees, tending to show that the mortgaged premises are worth somewhat more than appellant's mortgage. Appellee has placed valuable improvements thereon, but has failed to pay for the material. This has resulted in the filing of mechanics' liens. The burden was on appellees to establish their alleged contract; and, after much careful consideration of the record, we are persuaded that the affirmative testimony of appellant, coupled with the situation of

1. MORTGAGES: foreclosure: nonpayment of interest: part payment: effect.

the parties, the circumstances, and other facts proved, sustains his denial of the alleged contract.

We have made no attempt to set out in detail the testimony, which is somewhat voluminous. It is, as already indicated, conflicting, and necessarily much weight has been given to the circumstances and what seems to us the utter inadequacy of the alleged agreement to meet the exigencies of the situation. Of course, appellant had a right to make any sort of contract he saw fit; and, if he did so, the court will not undertake to make a new one for him, or to relieve him from the consequences thereof. The reasonableness or unreasonableness of the testimony is proper, nevertheless, to be considered, in determining the facts upon which the court must pass.

II. The appointment of a receiver in the event that an action of foreclosure should be commenced, is authorized by the mortgage. Appellant asks in his petition that a receiver be appointed. The evidence as to the value of the mortgaged premises is very conflicting, and it is more or less uncertain therefrom whether a sale thereof on special execution may not be for an amount sufficient to pay the judgment and costs. We reach the conclusion on this point that, if the land sells at sheriff's sale on special execution for an amount less than the entire judgment, then a receiver should be appointed to take possession of the premises during the period of redemption, to rent or manage the same and to receive the rents and profits therefrom. The court will retain jurisdiction of the case for the purpose of appointing a suitable person for receiver. The judgment entered below must be reversed. It is so ordered, and the cause is remanded to the district court for judgment and decree in favor of appellant, in harmony with this opinion, making provision for the appointment of a receiver by the district court at a later date, if necessity arises therefor.—*Reversed and remanded.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.